**PRO SE**
Sean Derning
1135 Porter Street Unit B
Vallejo CA 94590
628-285-7205

**FILED**

DEC 8 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES COURT**

**DISTRICT OF NORTHERN CALIFORNIA**

SEAN DERNING

      Plaintiff,

vs.

MARIN COUNTY SHERIFFS DEPARTMENT,
COUNTY OF MARIN, MICHAEL THOMPSON

      Defendant

Case No.:

**CV25·10498 CRB**

**COMPLAINT FOR VIOLATION OF 42 USC § 1983**

**Case In A Nutshell**

1.  Plaintiff Sean Derning is a resident of Binford Road and part and an intended beneficiary of a state grant called the Encampment Resolution Fund "ERF".

2.  As a beneficiary and program participant of the ERF grant, Mr. Derning has lived the past three years in non-operative motor home by the side of Binford Road where he has worked cooperatively with the County of Marin's case managers. He also has a permit to be in his current location issued by the County of Marin which is prominently displayed on the back of his motorhome which entitles him a pump out service of the septic system of his motorhome. The County also provides bathrooms and case management services to Mr. Derning through this program.

3.  Since 2024, Mr. Derning has been asking for disability accomodations for his anxiety, PTSD, a staphollocus infections which has impaired his hand, and is currently causing him great pain on his head where he has large, one inch diameter sores that are exuding pus. Mr. Derning is dealing with this during an extremely cold weather event where the temperature has regularly dipped below freezing. He is surviing through hthis primarily through motorhome that his only shelter.

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 1

CASE · 10498 GWB

NORTHERN DISTRICT OF CALIFORNIA
CLERK U.S. DISTRICT COURT

DEC 8 2025

FILED

4. Besides his numerous requests for accommodation, Mr. Derning further put both Deputy Thompson, the County of Marin, and Marin County Sheriffs Office (MCSO) on notice about his disabilities and request for accomodations for disabilities under Silveria et al v. Marin County Sheriffs Department 3:24-cv-03181-AMO. [See *Silveria*, ECF 1, Declaration of Sean Derning]. In that case, Derning requested a disability accommodation for slightly more space

5. Astoundingly, inspite of his years of presence On December 4, 2025 Deputy Thompson posted a notice on Plaintiff Sean Derning motor home that stated MARIN COUNTY SHERIFF VEHCILE TOW WARNING threatening Plaintiff that he would be summarily towed. Officer Thompson served the notice, saw that Mr. Derning was in medical distress – with inch large sores exuding pus from his head – and still decided to threaten Mr. Derning with the deprivation of his only home where he has lived for the past three years.

## PARTIES

**Plaintiff Sean Derning**

1135 Porter Street Unit B
Vallejo CA 94590                        628-285-7205

**Defendant Marin County Sheriffs Department**

1600 Los Gamos Dr #200, San Rafael, CA 94903

**Defendant Sheriff Deputy Michael Thompson**

1600 Los Gamos Dr #200, San Rafael, CA 94903County of Marin

**Defendant County of Marin**

3501 Civic Center Drive, San Rafael CA 94903

## JURISDICTION AND VENUE

6. This court has original federal question jurisdiction under 42 USC § 1983 and the Americans With Disability Act. Because the complaint and all defendants primarily reside in Marin County it should be assigned to the SF/O division of this court.

## STATEMENT OF FACTS

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 2

7. Binford Road is the largest community of people unhoused people in the County of Marin. During COVID-19 Binford became a hub of people who had lost their housing and were sheltering in place in their vehicles or tents.

8. Starting in 2022, the County of Marin and Marin County Sheriffs Department adopted a policy of directing all people living in motorhomes within unincorporated Marin County to move to Binford Road. The plan was that by coalescing vehicle dwelling people into a single location, they would be easier to manage. Importantly, the County of Marin would be able to use the large-scale encampment to leverage state funding through Encampment Resolution Fund Grants "ERF Grants". ERF grants were most available for government jurisdictions with large concentrated encampments.

9. The County of Marin ultimately obtained millions of dollars in ERF grant funding and executed an agreement with the State of California for that purpose[12]

10. ERF funds demanded the County of Marin to "feature data-informed, innovative service delivery models and cross systems collaborations that support individuals experiencing homelessness in encampments towards a meaningful path to safe and stable housing through non-punitive, low-barrier, person- centered, Housing First approaches. These projects must comply with the principles of Housing First as defined in Welfare and Institutions Code Section 8255, must serve a specific encampment site, and be designed to achieve sustainable outcomes for both recipients of services and the encampment site to be resolved."

11. Using this money, the County of Marin, working with the Marin County Sheriffs Department, set up a series of programs on Binford.

    A. The County installed porta potties up and down the road.

    B. The County started a pump out service to pump out people's personal toilets and greywater on Binford Road.

---

[1] https://www.marinij.com/2023/08/25/marin-county-unveils-plan-to-clear-novato-road-camp/
[2] https://www.marinij.com/2024/04/27/marin-awarded-18m-to-assist-homeless-campers/

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 3

C. The County contracted with Downtown Streets Team "DST", a non-profit homelessness service provider, to provide outreach and case management to residents.

D. The County created an environmental permit program that allows RVs to obtain a pump out service.

E. The County of Marin's fired department brought out fire extinguishers

F. The County of Marin began erecting fences and dirt berms on the shoulder of the road to prevent new people from moving onto the road.

12. The stated goal of the County is too clear Binford Road by 2026 by getting everyone into housing. While Mr. Derning has lived on Binford Road for the past three years in his motorhome.

13. The RV is a godsend because it has a locking door, a roof, and is a safe place to stay out of inclement weather and to store food, water, clothes, work supplies, documents, and other survival necessities. It is a place to sleep safe and sound. Mr. Derning has a good relationship with his DST outreach Mia Murphy who he is working on getting housing with and Jenniffer Mallow of the Marin Peer Resource Community Collective that provides housing related services to him. Twice a month, the County of Marin's contractor comes and pumps out Plaintiffs motorhome.

1. "[S]ome form of hearing is required before an individual is finally deprived of a property [ or liberty] interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). (Holding that beneficiaries of government welfare programs are entitled to due process for termination of benefits). "Parties whose rights are to be affected are entitled to be heard." This right is a "basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The pupose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment .... " *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972).

2. Currently, there are around 60 people living in motorhomes on Binford Road – including Derning. All Motorhomes allowed to be here must have an environmental permit issued on their vehicle.

3. Derning has an environmental permit that allows him to be on Binford like everyone else, and receive pump out services. Derning has a liberty interest in his permit, the benefit of the ERF grant, which have

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 4

allowed him and dozens of others to live on the side of Binford Road since 2022.

4. On December 4 2025, Thompson issued a notice that terminated Derning's liberty interest in the environmental permit, and the pump out service. Thompson was aware Derning's motorhome is not operative because he seized its fuel tank in the past. He was told by Derning the motorhome cannot currently drive.

5. Thompson's notice violated equal protection, because he was aware that Derning has an environmental permit and relies on the notice California Vehicle Code "CVC" 22651(k) and CVC 22651(O). Thompson is aware the under County and MCSO policy, these codes are not enforced on Binford Road against people with environmental permits, and that 95% of motorhomes on Binford Road have been parked where they are located for several years, and have registration that have been expired longer than 6 months.

6. Accordingly, Thompson was aware that he was aware the by towing the vehicle, he would deprive Derning of his motorhome, and deprive him of his liberty interest in the environmental permit program that he relies on by applying a law generally not applicable to people Derning's position, and that this would require some kind of hearing before terminating his liberty interest in the ERF grant.

**SECOND CAUSE OF ACTION – VIOLATION 42 USC § 1983 STATE CREATED DANGER DOCTRINE**
**(Against Michael Thompson).**

7. Plaintiff reincorporates the preceding paragraphs as if full set forth herein.

8. Thompson is also aware that Derning cannot move his motorhome, because he personally supervised the seizure of Derning fuel tank while Derning had been repairing his bus. Derning has asked for this back so he can fix his motor home and has told Thompson he cannot move the motorhome with out. Thompson has not cooperated in assisting Derning make the motorhome able to move.

9. Thompson is also aware that Derning's motorhome does not pose and environmental hazard greater than any of the other people allowed to live on Binford Road, or nearby businesses. Thompson regularly sees Derning's possessions do not spill into the road way or the nearby

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 5

estuary, because most of his possessions are neutralized by a chainlink fence or kept far back from the road.

10. On December 4th, 2025 Michael Thompson issued a notice against Sean Derning threatening to tow Mr. Derning's only home under his authority through MCSO. Thompson told Derning that he would tow his home on Wednesday.

11. Mr. Thompson is aware the Mr. Derning had lived in the motorhome for the past four years and has interacted with Derning on a weekly basis during that time.

12. Mr. Thompson is aware Mr. Derning is a beneficiary of the ERF Grant, because Derning has a County of Marin issued parking permit for his vehicle that is prominently displayed on his motorhome, that under the County's program, entitles him to live on Binford Road like dozens of other people living there, and two bi-weekly pump outs of his motorhomes septic from the County of Marin.

13. When Thompson issued the notice, Thompson could see Derning had several inch large stapholoccycus type infections on his head large sores protruding from his head that had pus exuding from them and that Derning appeared to be woozy and ill. Thompson was aware that Derning had no other place to live, and that because of his sores, Derning would not be allowed to enter the only homeless shelter available possibly available to him at Johnathans Place.

14. Thompson was aware the Derning was in a medically vulnerable position and would be made destitute by his action, likely causing Derning to die from exposure and complications to his infection caused by him being subject to freezing tempartures at night sleeping outside that depriving him of his motorhome would cause.

15. Thompson is also aware that by depriving Derning of his motorhome, he will deprive him of his only place he keeps his blankets.

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 6

16. Thompson was also aware that depriving Derning of his motorhome during the winter, while Derning is experiencing an acute staphollocycus infection on his head and cannot access any homeless shelter, would be particularly dangerous and deadly, and this act would cause Derning to experience substantially greater physical harm then he would otherwise face if he maintained possession of the motorhome to sleep in and store the necessities of life.

17. Thompson was deliberately indifferent to these forseeable dangers, because he was aware that Derning has no where else to move to, cannot access alternative shelter because of his infection. Thompson has made no effort to mitigate any possible danger that Derning will face as a result of taking his motorhome.

18. Thompson was also aware that Derning's primary medical care provider are the street medical teams that come to Binford Road. Thompson was aware that if Derning is removed from Binford, it will be difficult or impossible for Derning to access those medical services because he will have to walk miles.

19. Plaintiff will lose his only shelter. The place where he sleeps at night, keeps bedding, stays warm, and can lock the door at night to ward of intruders. If he loses his trailer, he will forced to live in a tent next to the road, and could get hit by oncoming traffic. People will be able to enter his tent, which does not have a lock, to attack him or steal his property.

**SECOND CAUSE OF ACTION – Violation of Title II of the Ameicans With Disability Act (Against Michael Thompson)**

20. Plaintiff Sean Derning is a person with disabilities, including PTSD, anxiety, and a chronic and sometimes severe staph infection. These conditions make it difficult for him to think clearly, stay organized, and carry out basic daily tasks. When his infection flares

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 7

up, he experiences open sores, pain, headaches, weakness, and numbness. These symptoms make it impossible for him to safely live outside without shelter, and they interfere with his ability to seek medical care.

21. For years, Plaintiff has asked the County of Marin for disability-related accommodations so he can continue to live safely on Binford Road, where the County administers the Encampment Resolution Fund (ERF) program. That program includes supportive services, coordinated cleanups, and a long-standing practice of not towing or displacing residents with expired vehicle registration. This forbearance is part of the County's approach and allows residents—including those with disabilities—to remain in their vehicles, which function as their homes.

22. Since 2024, Plaintiff has been engaged in an ongoing disability interactive process with the County. Together, Plaintiff and County staff developed a plan to help him manage his disabilities and keep his site clean. Plaintiff worked hard to reduce the number of belongings at his site and made significant progress. The County brought in hoarding specialists on two occasions to help him, and County cleanups became more regular. Plaintiff's site remained cleaner than many others on Binford Road and did not spill into the roadway or estuary.

23. Despite this history, on December 4, 2025—while Plaintiff was visibly ill and experiencing an acute medical crisis—Deputy Thompson issued him a tow notice. At the time, Plaintiff had open sores on his head, was in obvious distress, and was struggling to understand instructions because of the combined impact of his infection, PTSD, and anxiety.

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 8

24. Plaintiff immediately asked for accommodations. He asked the County to pause the tow threat, to clearly explain what standards he needed to meet, and to continue the collaborative process that had been working for over a year. These requests were reasonable and necessary for him to participate in the County's ERF program on equal terms with others.

25. The County denied these requests. It refused to modify its approach, even though the requested accommodations would not have fundamentally changed the program. The County continues to allow dozens of other residents on Binford Road to remain in unregistered vehicles in the same locations they have occupied for years. Plaintiff simply asked for the same treatment and the support needed to account for his disabilities.

26. By denying Plaintiff's accommodation requests and moving forward with towing his only shelter during a medical crisis, the County has excluded him from the benefits of the ERF program and subjected him to discrimination because of his disabilities. Without his motorhome, Plaintiff cannot remain warm, cannot rest, cannot carry the equipment he needs to survive the winter, and cannot follow medical treatment for a serious infection. The stress and threat of displacement have already interfered with his ability to seek care.

27. The County's actions violate Title II of the Americans with Disabilities Act because it failed to provide reasonable accommodations, denied Plaintiff meaningful access to its programs and services, and treated him differently because of his disabilities.

**THIRD CAUSE OF ACTION Monell Claim ( County of Marin, Marin County Sheriffs Department**

30. Plaintiff realleges the preceding paragaphs as if fully set forth herein.

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 9

31. Based on information and belief, all of casuse of action above have been ratified by the Count of Marin and Marin County Sheriffs Dep artment because they have adopted a custom where Deputy Michael Thompson has been given absolute authority to seize the homes of people living and abrograte benefits of the ERF grant, discriminate against people with disabilities, and place unhoused people into grave foreseeable dangers with deliberate indifference.

32. Both the Couny of Marin and Marin County Sheriffs Department ratified this custom in the case *Fleming v Marin County Sheriffs Department*, 3:24-cv-03859-RS where the final policy makers of the County and MCSO directed County Counsel to defend the absolute power of Deputy Thompson that had been restrained by Judge Seeborg.

33. And since the *Fleming* case, the County and MCSO has doubled down in enabling the absolute authority of Deputy Thompson to act as judge, jury, and executioner for the tenancy of people living on Binford Road without supervision or due process.

## Prayer For Relief

A. Plaintiff prays this court issue a TRO, Preliminary Injunction, and Permanent Injunction from enjoining Defendants from seizing Plaintiffs home and property.

B. For declaratory relief.

C. For attorneys fees and costs

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 10

**Verification**

Under Federal Rule of Civil Procedure 11, by signing below, I Sean Derning the Plaintiff in this case, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; (4) that I am responsible for all aspects of prosecuting this case because I am unrepresented by an attorney and proceeding pro se, and (5) I know I can receive limited legal advice on this case from an attorney about this case by contacting the Federal Pro Bono Project at the Justice and Diversity Center of the Bar Association of San Francisco by contacting them at (415) 782-8982 or fedpro@sfbar.org.

/s/Sean Derning
December 6 2025

COMPLAINT FOR VIOLATION OF 42 USC § 1983 - 11