**PRO SE**
Sean Derning
1135 Porter Street Unit B
Vallejo CA 94590
628-285-7205

FILED

DEC 15 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## UNITED STATES COURT

## DISTRICT OF NORTHERN CALIFORNIA

SEAN DERNING

        Plaintiff,

vs.

MARIN COUNTY SHERIFFS
DEPARTMENT, COUNTY OF MARIN,
MICHAEL THOMPSON

        Defendant

Case No.: 3:25-cv-10498-RFL

**PLAINTIFFS REPLY TO DEFENDANTS'
OPPOSITION TO TRO**

Hearing Date:  December 16 2025
Time: 2:30 p.m.
Hon: Rita F Lin

### Request For Judicial Notice

To rebut assertions made in Defendants opposition, Plaintiff requests judicial notice of *Fleming v Marin County Sheriffs Department 3:24-cv-03859-RS*, specifically ECF 13 & 8-1, which are attached in Exhibit C and Exhibit D of Powelson's Supplemental declaration, as well as current weather forecasts by the National Oceanic Atmospheric Administration.

**Exhibit C** of Powelson's Supplemental Declaration shows that the County has voluntarily rescinded towing of identically situated vehicles in the past that Thompson has slated for towing under CVC 22651 (k) & (o).

**Exhibit D** of Powelson's Supplemental Declaration contradicts Thompson assertion in his most recent declaration that the County has not issued permits to residents on Binford Road. Thompson admits these permits are part of the County's program at ECF 8-1, ¶7.

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

**Exhibit E** of Powelson's Supplemental Declaration shows the National Oceanic Atmospheric Administrations rain forecast this week, which shows it will be raining all next week starting on Tuesday and very cold weather through out.

**Facts In Dispute Justify An Evidentiary Hearing On PI**

It is undisputed that Plaintiff has lived on Binford for three years, participates in monthly communal clean ups, and is one of 28 other unregistered motorhomes on Binford Road. Plaintiffs medical testimony about the dangers of losing his home is undisputed, as is the fact the County is not providing Plaintiff any resources to mitigate these foreseeable dangers. However, defendants attacks Plaintiffs motion by asserting a variety of disputed facts that this court should permit testimony on.

Counsel Alleges that *"Similiarily Plaintiffs claim that his "parking permit" for Binford Road is being terminated is incorrect because no such permit exists."* **Opposition *11.** However, Plaintiff asserts that the permit is visibly displayed on his vehicle as a green sticker affixed to his vehicle, which can be seen on **Ex A Declaration of Sean Derning and on Page 1 of Exhibit Q** in the Declaration of Julia Barnes. Additionally while omitted in Thompsons declaration he, acknowledged the County issued these permits in past litigation. See **Suppl Decl. Powelson Exhibit D.** (Showing Thompson admitting to vehicle permit system on Binford Road).

Counsel alleges *"Plaintiff has refused to prevent personal property, debris, and trash from accumulating around his site on Binford Road"* **Opp. *10.** However, Plaintiff alleges that he has not been accumulating trash and debris around his dwelling, but has consistently made progress to reduce the amount of his belongings. This can be shown by comparing the amount of property had in 2024 **(Seen in Exhibit A of Declaration of Julia Barnes).** Compared with its current state. **See Supplemental Decaration ¶2 Ex A, Exhibit Q Julia Barnes.** Indeed in all

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

pictures of Mr. Derning's site now, defendants show that Plaintiffs property is neither in the roadway nor adjoining waterway – but

*"Allowing to continue to store his personal property in the right-of-way of a busy public road is not reasonable under the ADA or any objective standard"* **Opp *11** Plaintiff is not requesting to store his property in the right-of-way, rather Plaintiff is requesting continued used of his motorhome that is the same as other unregistered motorhomes that have been parked on Binford Road longer than 72 hours that are out of the right-of-way (e.g. Plaintiff is storing his property in the same place the County has erected chain-link fences which actually block more of the same right-of-way that Plaintiffs motorhome). **See Supplemental Declaration Sean Derning.**

*"Second a restraining order will prevent the County from dedicating resources currently being used to abate the dangerous conditions at Plaintiff's site to other worthwhile endeavors like providing social service to people on Binford Road"* **Opp *12**. First, Plaintiff avers this reasoning is a fallacy, because as Julia Barnes declaration shows most of the Plaintiffs property was removed last year, and hence, past costs are not predicative of future costs since Plaintiff has not acquired a similar amount of property since then. Mr. Derning's home is not a public hazard greater than the other 28 unregistered vehicles parked on Binford Road for years **Suppl. Decl Derning ¶2¶6¶7 Ex A.** Compare to **Declaration Barnes, Ex A (Plaintiffs site in 2024)**

*"A restraining order preventing the County from enforceing reasonabl health and sanitation precautions for the protection of the community will encourage the County to not allow similar encampments in the future."* **Opp *12** Plaintiff is not requesting the County to stop reasonable health and sanitation precautions and Plaintiff has been cooperative. Rather, Plaintiff

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

requests a narrow restraining order to prevent the destruction of his motorhome. **Suppl Decl Derning ¶6**

"County Notes that Plaintiffs argument assumes that his vehicle will be seized and ignores the possibility he could moei t to a different location that does not violate the County's Parking Ordinance." **Opp \*10** Plaintiff would welcome being able to move his motorhome to a place that does not violate the ordinance, but does not have a mean of moving his non-operative motorhome (partially because the County took his fuel tank while he was working on his motorhome in the past) **Suppl. Decl Derning ¶6. Supplemental Declaration Powelson ¶¶2-5 Ex A, Suppl. Decl Derning**

"Whether the County begins enforcing its parking ordinance against Plaintiff or not, he will face the same generalized dangers of being unhoused that he previously faced". Opp \*10. Plaintiff factually asserts he faces particular dangers because his motorhome provides substantial shelter, locking door, a spring mattress,  that keeps him warm in order to fight an acute infection that is causing bleeding cysts on his head, and also protects him from inclement weather, including a weeks worth of rain coming this week. **Decl Brizzolara, Suppl. Decl Powelson Ex E.** Additionally, Mr. Derning's motorhome has electric heating and solar electricity that, as well as a locking dooring a strong walls that keep out wind and rain. **Suppl Decl Derning ¶10-13**

Finally, the Julia Barnes scurrilously alleges without evidence that the County of Marin has spent over $100,000 on cleaning up Sean Dernings site. This is preposterous – because Mr. Derning has only ever participated in monthly clean ups already organized by the County for the entire road. The County provides cleaning services to everyone during these clean ups, and does not necessarily need to incur special costs for Mr. Derning since the overhead expenses are already covered by the clean up service. **Supplemental Decl Derning ¶14**

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

### _Serious Questions Going To State Created Danger Doctrine_

Defendants assertion on the particularity of dangers misrepresents caselaw to draw false comparisons on the test for particularity in state created danger claims. The cases they cite, _Cobine v City of Eureka,_ 250 F. Supp. 3d 423,433 (N.D. Cal 2017), _Reed v City of Emeryville,_ 568 F. Supp 3d 1029, 1039-40 (N.D. Cal 2021), and _Housing is a Hum. Right Orange Cnty v Cnty. Of Orange_ No 19-cv-388, 2019 WL 6481311 deal with encampments of people living in tents and addressed encampments where people could move their belongings to other comparable locations. They also dealt with large encampments, and did not address specific health disabilities of particular plaintiffs (in _Cobine_ and _Reed_, the state created danger was also obviated by provision of alternative shelter).

This case is the opposite. Here, Mr. Derning cannot move his motorhome – which is a substantial structure with a locking door that provides substantial protection from wind, rain, cold. Derning. It has a spring mattress, blankets, clothes, and stores all of Mr. Darning's worldly belongings. Derning It cannot be moved because while Mr. Derning was repairing it, the County seized his fuel tank Derning. Novato is currently experiencing a cold snap and there are rains expected all this week. **Decl Powelson Ex B.** Mr. Derning has no way to move his alternative structure – and unlike _Cobine_ and _Reed_ there is no alternative shelter being offered to Plaintiff. Nor is it possible for Derning to access that shelter, because the only shelters that could be possibly be available do not allow people with infectious communicable diseases .Declaration Mallow. Mr. Derning suffers from a life threatening, and contagious staph infection that causes pus, blood, and sebum to drip from his head. **Decl Brizzolara.**

Because the protection Mr. Dernings substantial structure provides from the elements is irreplaceable except with out provision of alternative shelter, the destruction of his motorhome

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

by the abatement will put him at greater danger to the winter weather and acute medical decompensation. He does not even own a tent to move into. Suppl Derning,

Mr. Derning's vulnerability, In that case, the issue at hand is substantially more similar to the recent case *Alfred v Vallejo* 2:24-cv-03317-DC-SC (E.D. Feb 7 2025). In that case, the district court and injunction upheld by the Ninth Circuit enjoining the destruction of a disabled women's home because she had built a solid structure, and destruction of it during winter and in a high crime area was likely to cause her harm. That is the case here, as lined out by Registered Nurse Megan Brizzolara and Sean Derning.

Mr. Derning's house is a strong shelter, with solar electricity that charges plaintiffs heaters and electronics. It protects him from the rain and wind. He does not have any other comparable protections. **Suppl Derning ¶6¶7¶¶11-13. Declaration of RN Brizzolara**

### *Serious Questions Going Americans With Disability Act*

Fatal to defendants argument, it is undisputable that part of the County's program has included retracting tow notices under California Vehicle Code 22561 (O) and (K) in the past in the litigation of *Fleming v Marin County Sheriffs Department* i

Defendants do not dispute Sean Derning has made a disability accommodation related to the tow , including as far back as June 11 2024 when county officials refused interact with Plaintiffs companions as an accommodation. **Suppl Decl. Powelson, Suppl. Decl Derning.**

Defendants also concede that neither the agency head of County of Marin nor their designee has responded to the request, or made a determination considering all possible evidence under 28 CFR 35.164(a). Additionally, the County has refused to work with Mr. Derning ADA companions he designated to help him in the As this court recently noted in *Koontz v Town of Fairfax*

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

"Defendants have a duty under the ADA to engage in fact-specific analysis and work with Koontz to identify a workable "alternative modification," before abating her tent and belongings. *Wong*, 192 F.3d at 818; *see also Duvall*, 260 F.3d at 1139 ("A public entity's duty on receiving a request for accommodation is well established, . . . [i]t is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation."). Should Defendants fail to engage in the ADA process prior to attempting to carry out an abatement, Koontz may be able to raise a meritorious and ripe ADA claim for which preliminary injunctive relief may be available." *Koontz v Town of Fairfax 3:25-cv-01311-RFL* (N.D. April 1 2025).

The case at bar is a ripe ADA claim contemplated by this court in *Koontz*. The scope of the program is substantially broader then *Where Do We Go*, which had to do with high priority encampments that the policy required 72 hours notice. Here, we have Mr. Derning living on Binford Road that is provided comprehensive services, including parking permits, pump out services, bathrooms, case management, and trash services. He has lived on Binford 3 years, and has a parking permit issued by County prominently displayed on his vehicle along with 28 other unregistered motorhomes that have been there for a similar length of time. As Judge Chen recently found in applying *Where Do We Go* to a recent homeless ADA case in *Berkeley Homeless Union v City of Berkeley* 3:25-cv-01414-EMC (N.D. June 10 2025), he issued an injunction enjoining clearing of the camp for 45 days to allow campers the opportunity to engage an interactive process to find reasonable accommodation (See , the duration a camp has been in place effects the scope of the program. Here, where the head of the agency has made no fact determinative decision on the ADA request, and Mr. Derning has lived on Binford Road for over three years with the consent and assistance of the County, it only stands to reason that he should have an opportunity for accommodations for such a serious decision effecting his health and welfare that is comparable to Judge Chen's decision in in *Berkeley Homeless Union v City of Berkeley* 3:25-cv-01414-EMC (N.D. June 10 2025) and this reasoning is consistent with this courts reasoning in *Koontz*. .

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

## Conclusion: Under Sliding Scale Test Plaintiff Has Met Burden For TRO

Plaintiff has raised serious questions going to the merits that warrant an evidentiary hearing on the preliminary injunction. The County has failed to make a determination about Mr. Derning's, and competent medical evidence demonstrates the destruction of his non-operative motorhome will put him at serious risk of injury and death as he put onto the streets during the cold and rainy weather with no alternative shelter. The injunction does not prohibit the County enforcing health and welfare standards – exactly the opposite – the injunction would allow Mr. Derning and his motorhome to stay on Binford Road to work collaboratively with the County to maintain health and safety.

Plaintiffs ADA companion, has proposed to meet with County to work these issues out through the interactive process. Suppl Powelson Ex A. and there are rains approaching this week that Mr. Derning will forced to live unsheltered in if the court fails to issue the TRO. Obviously, now is not the time after three years to destroy Mr. Derning's only home. The court should issue a TRO and order the parties to engage in the interactive process to see if the parties can resolve the issue. Plaintiff welcomes a global settlement of injunctive claims and is open to meeting a settlement judge to resolve the issue. [1]

/s/ Sean Derning         December 14 2025

---

[1] If the court was to designate a magistrate judge for settlement, Plaintiff would propose Magistrate Judge Robert Ilman, based on his extensive experience litigating litigation related to homelessness, specifically in Marin County. See *Boyd v City of San Rafael* 3:23-cv-04085-EMC(RMI), *Sausalito Marin County Homeless Union v City of Sausalito* 3:21-cv-01113-EMC(RMI); *Marin County Homeless Union v City of Novato* 3:21-cv-05401-YGR(RMI); *Boyd v City of San Rafael* 3:23-cv-04085-EMC(RMI).

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO

**PRO SE**
Sean Derning
1135 Porter Street Unit B
Vallejo CA 94590
628-285-7205

FILED

DEC 15 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES COURT**

**DISTRICT OF NORTHERN CALIFORNIA**

SEAN DERNING

      Plaintiff,

vs.

MARIN COUNTY SHERIFFS DEPARTMENT,
COUNTY OF MARIN, MICHAEL THOMPSON

      Defendant

Case No.: 3:25-cv-10498-RFL

**SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI**

Hearing Date:  December 16, 2025
Time: 2:30 p.m.
Hon: Rita F Lin

1. I Sean Derning do declare I have personal knowledge of all facts in this declaration and if called to testify could and would do so competently.

2. Attached in **Exhibit A** are true and correct photographs of my motorhome on December 14th 2025 from every 90 degree angle. It shows my property is not blocking the right of way. Additionally, I have observed that my motorhome is not closer to the fog line than other motorhomes on Binford Road. No one has ever mentioned I am too close to the fog lines for the past three years.

3. Importantly, the County of Marin has erected fences that block substantially more of the right of way then my property. These fences surround my domicile as shown above.

4. Since June 2024, I have been asking the County of Marin to communicate with my advocate Robbie Powelson about disability accommodations, but Andrea O'Malley who has lead the ADA process and brought out the hoarding specialists refused to talk with Robbie and wrote on June 11th that she would only communicate with me.

SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 1

5. I believe the failure to include Robbie Powelson has impaired our ability to communicate because I suffer from PTSD and anxiety that make it difficult for me to process, intake, retain, and express information. I feel like not including Powelson has made it harder to communicate, and I have directed Powelson to reinitiate the interactive process with the County of Marin to resolve this dispute.

6. As I stated at the hearing and my motion, my motorhome cannot move. I do not have any means of towing it. The County seized my fuel tank while I was trying to fix it last year. I cannot afford a new fuel tank. The County took away my ability fix my motorhome. I am also concerned about the structural integrity of towing it, I believe some repairs may need to be made to the chassis before it is safe tow without breaking apart.

7. Second, the trash and storage that Michael Thompson alleges in December 10th is misleading – after he told me he was going to evict me I have been preparing for the worst and been organizing my things in case I have to move under the nearby overpass next to the train tracks, since that is the only place I will be able to move out of the rain coming this week.

8. I do not own a tent. I have an injured hand due to a staph infection I had several years ago that damaged my nerve. I cannot move my mattress because it is too bulky. I will likely be sleeping on cardboard, exposed, under the overpass, if I don't get the TRO. So I have been preparing for that physically and mentally.

9. Because I don't store things outside of my motorhome, I store them in my motor bus. As a result, if I need to access things in my motorhome I have to reorganize things, I have to move things on top of the pile outside temporarily to access things on the lower part of the pile. I am not storing things outside my trailer, I am moving things around. I've explained this Julia Barnes and Thompson.

SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 2

10. I will say that since 2024, I have been asking Michael Thompson, and Andrea O'Malley to communicate with Robbie Powelson as my advocate to help with disability accommodations. I sent a written confirmation to Andrea O'Malley about this in June of 2024. But Andrea O'Malley refused to do so, she says its my responsibility to do all the communication myself. But I find engaging in with County in this way causes me anxiety and PTSD, which makes it difficult for me to express myself and retain information from our meetings. I think if they would communicate with my advocates, it would be better for everyone and would help manage my disabilities.

11. Also, I am surprised that the County says they are still storing my things. I was told last year they had destroyed my belongings that they took in June 2024. They refused to allow Robbie Powelson to come and pick them up after I told them he would. So I didn't know they were still storing my property like Julia Barnes was claiming.

12. I really got to emphasize how good the motorhome is at keep me warm. I have an electronic blanket and a heater that keeps me warm that is connected to the large solar panels on my motorhome and large batteries that store energy. My solar panels are huge and I cannot move them. They provide all of my electricity that I use to keep my phone charge, do my work, manage my businesses website. Much of my property are tools I use for contracting business.

13. I want to emphasize how important my motorhome is to protect me from the weather: wind and rain do not enter. It keeps me and my things dry. I have a locked door that prevents intruders from entering. If I lose this motorhome, I am going to live under and underpass because that is the closest place I can move my belongings and that provides shelter from the upcoming rain. The overpass is busy and cars are constantly driving over it spewing down exhaust and

SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 3

debris, and is right next to an active train line. I do not have a car to move my belongings any where else, so I have to move all my belongings myself.

14. The County of Marin has never come and done a clean up only to my motorhome. Every month, the County does a clean up for everyone, and I participate. They do my motorhome like everyone else. So, it seems to me that saying they spent $100,000 on me – without providing receipts – is unlikely. I am one of dozens of other people who participate in the monthly clean ups so the overhead costs of the clean up are part of the general costs of the activity. And I have always been under the impression they were glad I was participating and working with them and reducing the amount of my belongings.

I swear the foregoing under penalty of perjury.

**/s/ Sean Derning**

**December 14 2025**

SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 4

Exhibit A

SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 5



SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 6



SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 7



SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 8



SUPPLEMENTAL DECLARATION OF SEAN DERNING IN SUPPORT OF TRO AND PI - 9

**PRO SE**
Sean Derning
1135 Porter Street Unit B
Vallejo CA 94590
628-285-7205

## UNITED STATES COURT

## DISTRICT OF NORTHERN CALIFORNIA

SEAN DERNING

      Plaintiff,

vs.

MARIN COUNTY SHERIFFS
DEPARTMENT, COUNTY OF MARIN,
MICHAEL THOMPSON

      Defendant

Case No.: 3:25-cv-10498-RFL

**SUPPLEMENTAL DECLARATION OF
ROBBIE POWELSON IN SUPPORT OF
TRO AND PI**

Hearing Date:  December 16 2025
Time: 2:30 p.m.
Hon: Rita F Lin

1. I Robbie Powelson do declare I have personal knowledge of all facts in this declaration and if called to testify could and would do so competently.

2. Attached in **Exhibit A** is request to meet for a disability accommodation meeting I sent to Jacy Dardine requesting a meeting to engage the disability accommodations to Mr. Dardine.

3. In that letter, I reminded Mr. Dardine that in the past in the past the County has rescinded tows against non-operative homes that had been tagged for towing under CVC 22651 (o) and (k) as Mr. Derning. This was the case in 2024, when the County rescinded a tow against Joseph Fleming after Michael Thompson had threatened for being parked longer then 72 hours with expired registration.

4. I also articulate in the letter why I believe the County's disability accommodation process, lead by Andrea O'Malley who is the Senior Social Service Worker who oversees social services on Binford Road, is defective. Namely, Ms. O'Malley made a decision not to allow Mr.

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 1

Derning to have advocates assist in the interactive process, and refused to engage with me. Attached in **Exhibit B** is an email Ms. O'Malley sent me and Sean Derning on June 11 2024 stating that she would not communicate with me about issues concerning Mr. Derning. She confirmed this another time when I met her in person in San Rafael, where she reaffirmed that she would not work with or any other companion of Mr. Derning in disability accomodations. She also refused to allow me to pick up belongings from Mr. Derning's storage unit, after he told us both he wanted me to get those things for him.

4. Attached in **Exhibit C** is a true and correct copy of an affidavit written by Jacy Dardine confirming that the County had voluntarily rescinded the tow of Joseph Fleming's vehicle under CVC 22651 (o) and (k). I obtained this from PACER, *Fleming v Marin County Sheriffs Department 3:24-cv-03859-RS ECF 13.* As is detailed in the affidavit, this decision by the County was not the result of a settlement agreement and was consistent with the County's general operating procedures.

5. Attached in **Exhibit D** is a true and correct copy of an affidavit written by Michael Thompson confirming that he had noticed Joseph Fleming's vehicle under CVC 22651 (o) and (k). He also confirms that county issued vehicle permits to residents on Binford Road, which is omitted in his most recent declaration. I obtained this from PACER, *Fleming v Marin County Sheriffs Department 3:24-cv-03859-RS ECF 8-1.*

6. Additionally, attached in **Exhibit E** is a true and correct copy of the upcoming rain forecast from the National Oceanic Atmospheric Administration as of December 14 2025. The report shows that it will be raining all week.

I swear the foregoing under penalty of perjury

/s/ Robbie Powelson                    **December 14 2025**

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 2

EXHIBIT A

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 3

Robbie Powelson
**Robbiepowelson@gmail.com**

VIA EMAIL

December 14 2025

Jacy Dardine,
Jacy.Dardine@marincounty.gov

Andrea O'Malley
*Andrea.OMalley@marincounty.gov*

Julia Barnes
*Julia.Barnes@MarinCounty.gov*

Michael Thompson
*M_Thompson@marinsheriff.org*

**RE: Renewing Disability Accommodation & Interactive Process For Sean Derning**

As you are aware, Mr. Sean Derning has formally designated me as his companion and support person for purposes of engaging in the County's disability accommodation process. In that capacity, we are proposing that we promptly schedule a meeting to engage in the ADA interactive process and identify accommodations that reasonably balance Mr. Derning's disabilities with the County's operational concerns.

To allow this process to occur, we ask that the County rescind the tow as it did with Joseph Fleming in 2024. There, Thompson has issued a notice under 22651(o) & (k), and voluntarily retracted that tow notice after Mr. Fleming requested it. See *Fleming v Marin County Sheriffs Department* 3:24-cv-03859-RS ECF 13, 8-1. Here, Mr. Derning is requesting the same thing – and in good faith so we can resolve this dispute and work towards our shared interests of keeping Binford Road clean, safe, and Mr. Derning on a pathway to housing.

Mr. Derning shares the County's stated interest in maintaining a clean and orderly living environment. Since at least 2024, he has been proactive in seeking assistance, requesting disability accommodations, and cooperating with the County's monthly cleanup efforts. As reflected in the photographs submitted with Julia Barnes's declaration, Mr. Derning has consistently worked directly with cleanup crews and has made substantial and visible progress over time. A comparison of his living area from Exhibit A to the most recent photographs in Exhibits N–P demonstrates marked improvement. It is undisputed that his property is not obstructing the roadway and is located between the fence line and his motorhome.

Given this undisputed progress, the remaining dispute appears to stem primarily from miscommunication rather than noncompliance. A central point of confusion has been the County's definition of "storage." Like other residents along Binford Road, Mr. Derning necessarily moves items in and out of his motorhome while cleaning, organizing, or working. This often requires temporarily placing items on the ground to access property stored underneath. This practice is common along the road and reflects ordinary living activity—not permanent outdoor storage. Mr. Derning does not understand why he is being singled out for enforcement under these circumstances.

This breakdown in communication can be traced to June 2024. On June 8, 2024, Mr. Derning expressly requested that I be designated as his support person for purposes of the disability accommodation process, including assistance with triaging property to storage. On June 11, 2024, Andrea O'Malley informed me that she would not communicate with me and would communicate only with Mr. Derning. While Ms. O'Malley later engaged hoarding specialists to assist Mr. Derning—an effort that has clearly contributed to the improved conditions—the County's refusal to communicate with Mr. Derning's designated companion has materially impaired the interactive process.

Mr. Derning has repeatedly explained that he suffers from PTSD, anxiety, and related mental health conditions that impair his ability to receive, retain, process, and communicate information—particularly in high-stress interactions with government officials. Allowing a designated support person to assist him is a reasonable and necessary accommodation. I am willing to continue assisting in that role. In addition, Mr. Derning's case manager, Jennifer Mallow, and his treating nurse, Megan Brizzolara, have both indicated their willingness to participate in a collaborative meeting with the County to resolve these issues in a manner that protects the health and safety of all involved.

On December 8, 2025, Mr. Derning formally submitted a renewed request for disability accommodations seeking rescission of the tow notice placed on his non-operative motorhome, which has been his sole shelter for the past three years. The motorhome is essential to managing multiple disabilities, including a serious staphylococcal infection currently causing visible bleeding cysts, fever, and exhaustion, as well as PTSD, anxiety, depression, hoarding disorder, and permanent nerve damage from a prior staphylococcal infection to his hand.

This request is part of a long-standing series of accommodation requests made by Mr. Derning—and by me on his behalf—since 2024. Despite this, the County has effectively refused to engage in a meaningful interactive process by excluding Mr. Derning's designated companion and communicating with him exclusively, despite clear notice of his disabilities.

The applicable law is clear. Under **28 C.F.R. § 35.130(b)(7)(i)**, a public entity must make reasonable modifications to policies and practices when necessary to avoid disability discrimination unless it can demonstrate a fundamental alteration. Under **28 C.F.R. § 35.164**, the burden of proving such an alteration rests with the public entity and must be supported by a written determination made by the head of the agency or designee after considering all available resources. Further, **28 C.F.R. § 35.160(a)(1)** requires public entities to ensure that

communications with individuals with disabilities—and their companions—are as effective as communications with others.

Here, the County has neither issued a written determination explaining why rescinding the tow notice, clarifying standards, or providing written guidance would constitute a fundamental alteration, nor proposed an alternative accommodation that would ensure equal access. Instead, the County has continued to proceed without engaging Mr. Derning's designated companion, despite express notice and legal entitlement to such assistance.

We believe this matter is resolvable. However, resolution requires the County's willingness to engage in good-faith communication with Mr. Derning and his designated companions. Accordingly, we request an expedited meeting that includes County representatives, Mr. Derning, myself, his case manager, and his nurse to identify reasonable accommodations and avoid further harm.

Finally, the timing of this enforcement is particularly troubling. It is the holiday season. Forecasts from the National Oceanic and Atmospheric Administration project rain throughout the coming week. Evicting Mr. Derning from his only shelter—after three years—while he is suffering from a serious staphylococcal infection, and without providing any alternative shelter, would be medically dangerous and would shock the conscience. Taxpayers have invested substantial resources into Binford Road with the stated goal of helping residents stabilize and move toward housing. Making Mr. Derning destitute at this stage undermines that investment and serves no legitimate public purpose.

The County should rescind the tow notice and engage immediately in the ADA interactive process with Mr. Derning and his designated companions to reach a lawful and humane resolution.


I hope we can work this out promptly.

Truly yours,

**/s/Robbie Powelson**


CC Marin Board of Supervisors
CC Marin Sheriff Civilian Oversight Commission

EXHIBIT B

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 4

 **Gmail**

Robbie .Powelson <robbiepowelson@gmail.com>

# RE:

2 messages

**O'Malley, Andrea** <Andrea.OMalley@marincounty.gov>                    Tue, Jun 11, 2024 at 10:50 AM
To: "Robbie .Powelson" <robbiepowelson@gmail.com>

Hello,

I am communicating directly with the clients and the clients need to reach out directly.

Thank you!

Andrea O'Malley

Senior Social Service Worker, Health and Human Services/Homelessness and Coordinated Care

1177 Francisco Boulevard East

San Rafael, CA

Andrea.omalley@marincounty.gov

628-587-7921

**From:** Robbie .Powelson <robbiepowelson@gmail.com>
**Sent:** Tuesday, June 11, 2024 10:36 AM
**To:** O'Malley, Andrea <Andrea.OMalley@MarinCounty.gov>; binfordrd@gmail.com
**Subject:** RE: Sean Derning Property Retrieval

You don't often get email from robbiepowelson@gmail.com. Learn why this is important

Hi Andrea,

I am asssting Sean  Derning retrieving property with my truck today. Please let me know the address so I can arrive there
on at the scheduled pick up time 1:00 this afternoon.

Gender pronouns He/Him/They

~ HEALTH AND HUMAN SERVICES CONFIDENTIALITY NOTICE~ The information contained in this document may be
privileged, confidential, and protected under applicable law and is intended solely for the use of the individual or entity to

which it is addressed. If you are not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and destroy the document. Email Disclaimer: https://www.marincounty.org/main/disclaimers

---

**Robbie .Powelson** <robbiepowelson@gmail.com>                    Tue, Jun 11, 2024 at 11:31 AM
To: Jenna Brady <Jenna.Brady@marincounty.gov>, "O'Malley, Andrea" <Andrea.OMalley@marincounty.gov>, binfordrd@gmail.com

Andrea,

I don't feel comfortable with you communicating with me ex-parte without including Sean Derning our communications. Mr. Derning has directed you in writing to communicate with me in the other email thread and he should be included in these communications. Please just provide the address of where we are going to retrieve the property as we have requested.

We have not heard back from Mia about the pick up today. We do not have an address to pick anything up. I have a busy schedule and I need us to be able to promptly pick up the property at 1:00 as was indicated would occur to Mr. Derning.

Please let me know if Mr. Derning's trailer is available for retrieval as soon as possible as I may need to get special equipment to tow it out of your yard.

Gender pronouns He/Him/They
[Quoted text hidden]

EXHIBIT C

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 5

BRIAN E. WASHINGTON, MARIN COUNTY COUNSEL
Jenna Brady, Chief Deputy County Counsel
State Bar No. 233440
Jacy C. Dardine, Deputy County Counsel
State Bar No. 294294
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Tel.: (415) 473-6117; Fax: (415) 473-3796
jenna.brady@marincounty.gov
jacy.dardine@marincounty.gov

Attorneys for Defendants
COUNTY OF MARIN, MARIN COUNTY
SHERIFF'S OFFICE, and MICHAEL
THOMPSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH FLEMING,<br><br>            Plaintiff,<br><br>      v.<br><br>MARIN COUNTY SHERIFF'S DEPARTMENT, COUNTY OF MARIN, and MICHAEL THOMPSON,<br><br>            Defendants. | Case No.: 24-cv-03859-RS<br><br>**DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**<br><br>Date:    July 18, 2024<br>Time:    1:30 P.M.<br>Dept:    San Francisco<br>          Courtroom 3, 17th Floor<br>Judge:   Honorable Richard Seeborg<br><br>Date Filed:        June 28, 2024 |

Defendants COUNTY OF MARIN, MARIN COUNTY SHERIFF'S OFFICE (erroneously sued as "MARIN COUNTY SHERIFF'S DEPARTMENT," and MICHAEL THOMPSON (collectively "County") hereby submit this supplemental response to plaintiff JOSEPH FLEMING's ("Plaintiff") motion for a temporary restraining order/preliminary injunction.

///

///

**DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**
Case No.: 24-cv-03859-RS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On July 11, 2024, this Court extended the temporary restraining order it issued on June 27, 2024, and ordered the parties to appear at the hearing on July 18, 2024, to address whether a preliminary injunction is warranted and if settlement discussions would be fruitful.  The Court further authorized the parties to submit briefing addressing these issues.  Having previously submitted briefing on the merits of the temporary restraining order/preliminary injunction, *see* Dkt. No. 8, County takes this opportunity to address the status of settlement discussions and the additional issues raised by Plaintiff in his Notice Re: Order to Meet and Confer – specifically, the allegations concerning, what appears to be a claim for selective enforcement.

## II.  SETTLEMENT DISCUSSIONS

As summarized in the Court's order extending the temporary restraining order, *see* Dkt. No. 12, the parties attempted to meet and confer regarding County's offer to withdraw the notice to tow the RV at issue provided that Plaintiff agree to work with County and its partners to secure alternative housing that does not involve long-term parking on Binford Road.  Although, from County's perspective, the initial discussions were fruitful, the discussion quickly devolved when Plaintiff declined to continue the conversation and instead filed a brief with the Court mischaracterizing the discussions.

County's notice to tow the vehicle has effectively already been withdrawn, and County agrees that it will not re-notice it while Plaintiff is on a path towards alternative housing.  However, to the extent Plaintiff appears to be seeking blanket immunity from enforcement of traffic laws, this is not something County could or would agree to.  As discussed more fully in County's response to Plaintiff's motion for a temporary restraining order, California law and Marin County Code prohibit vehicles from parking on public roads for more than 72 hours, and, although County has exercised its discretion to avoid enforcement and instead focus on providing services and connecting residents to community partners to provide alternative housing, this discretion is not unlimited and does not extend to individuals that decline to pursue those options.  Thus, County reserves its right to tow vehicles that are illegally parked and without registration because they are dangerous to public health and safety.  Plaintiffs' argument that County should be enjoined from enforcing the law lacks merit.

2

## III. "SELECTIVE" ENFORCEMENT

Plaintiffs claim that he is being "singled out" for enforcement is simply untrue. As Plaintiff concedes in his Complaint, he does not own the RV at issue, it does not run, and it was previously occupied by another resident, Jamie O'Hara, who obtained alternative housing through County services. Although it is outside the scope of this case, it should be noted that some residents on Binford Road have taken to "renting" their vehicles to new individuals once they have obtained alternative housing. To combat this tendency, County has implemented a buy-back program to remove existing vehicles from Binford Road upon rehousing. Indeed, County's goal is to remove *all* vehicles from Binford Road, and County has obtained funding from the California Interagency Council on Homelessness to "resolve" the Binford Road encampment. Residents that do not participate in County services to seek alternative housing are subject to enforcement. There is no exception for Plaintiff.

"Selective enforcement" or "selective prosecution" claims under the Fourteenth Amendment require a showing that enforcement "had a discriminatory effect and police were motivated by a discriminatory purpose." *Rosenbaum v. City and Cnty. of San Francisco*, 484 F.3d 1142, 1152-53 (9th Cir. 2007) The standard for proving discriminatory effect "is a demanding one." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 922 (9th Cir. 2012). Moreover, to prove an improper purpose requires a showing that enforcement was "on the basis of an impermissible ground such as race, religion or exercise of . . . constitutional rights." *Id.*

Here, there is no evidence that Deputy Thompson, or anyone else for that matter, has selectively enforced California traffic laws against Plaintiff, let alone based on the basis of an impermissible ground such as race, religion, or the exercise of a constitutional right. As discussed above, County is working to remove *all* vehicles from Binford Road, and there is no exception for Plaintiff. Deputy Thompson has agreed not to tow Plaintiffs' vehicle while he is working with County to pursue alternative housing. That should be the end of the issue, as it is now moot.

Although not entirely clear, Plaintiff appears to argue that he is being selectively targeted because other vehicles on Binford Road also have expired registration and have been illegally parked for more than 72 hours. Based on Plaintiffs' logic, County would either be required to tow every vehicle on Binford Road, or none. The Fourteenth Amendment does not require such drastic action. County has

3

provided Plaintiff and this Court with the reasons the vehicle Plaintiff claims to have been residing in was posted with a notice that it was in violation of California vehicle code, none of which are discriminatory and there is no evidence to the contrary, nor could there be, because it is simply untrue.

**IV. CONCLUSION**

For the reasons set forth above and in Defendants' Response to Plaintiff's Motion for a Temporary Restraining Order, County requests that this Court deny the Motion for a Temporary Injunction.

Dated: July 17, 2024

OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN

_____
Jenna Brady
Jacy C. Dardine
Attorneys for Defendant
COUNTY OF MARIN, MARIN COUNTY
SHERIFF'S OFFICE, and MICHAEL
THOMPSON

**DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**
Case No.: 24-cv-03859-RS

EXHIBIT  D

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 6

BRIAN E. WASHINGTON, COUNTY COUNSEL
COUNTY OF MARIN
Jenna Brady, Chief Deputy County Counsel
State Bar No. 233440
Jacy C. Dardine, Deputy County Counsel
State Bar No. 294294
3501 Civic Center Drive, Room 275
San Rafael, CA 94903
Tel.: (415) 473-6117; Fax: (415) 473-3796
jenna.brady@marincounty.gov
jacy.dardine@marincounty.gov

Attorneys for Defendants
COUNTY OF MARIN, MARIN COUNTY
SHERIFF'S OFFICE, and MICHAEL
THOMPSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH FLEMING,<br><br>Plaintiff,<br><br>v.<br><br>MARIN COUNTY SHERIFF'S DEPARTMENT, COUNTY OF MARIN, and MICHAEL THOMPSON,<br><br>Defendants. | Case No.: 24-cv-03859-RS<br><br>**DECLARATION OF DEPUTY MICHAEL THOMPSON IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER** |

I, Deputy Michael Thompson, declare:

1. I am, and at all times relevant to this matter, have been a Deputy Sheriff for the Marin County Sheriff's Office. I have personal knowledge of the facts stated in this declaration and if called as a witness could and would testify competently thereto.

2. I have been a Deputy Sheriff for the County of Marin since 2005. Since January 2022, I have been a Homeless Liaison. In that role, I perform outreach to residents that are homeless and/or

1

186574

housing insecure and connect them with social workers and others that assist them in securing services and housing. I also work within the County and with our community partners to reduce the number of homeless residents unnecessarily entering the criminal justice system, and to use community policing strategies to address issues in and around homeless encampments.

3. In my role as Homeless Liaison, I am on Binford Road multiple times a week connecting with individuals residing along the road in their vehicles or structures. Binford Road is a long stretch of road in unincorporated Marin County that has the bay on one side and commercial buildings on the other and is two lanes.

4. Some of the individuals who reside on Binford Road store personal belongs along the road in the public right-of-way. The road is narrow and has no sidewalks. Therefore, it can be dangerous for cars and people walking along the road because of how close the vehicles and personal property are to the road. Since the pandemic, the population on Binford Road has grown, with most individuals residing in their recreational vehicles (RV). There is also a risk to the environment because individual's personal property has fallen into the bay along the road and some of the RVs are leaking onto the road. Long term parking is not legally permissible on Binford Road, but the County's focus has been on transitioning people into alternative housing while maintaining safety to the individuals on Binford Road and the surrounding community.

5. I am familiar with the Plaintiff in this action.

6. I was informed that the individual who had been residing in the RV had been recently housed and therefore on June 22, 2024, I posted the vehicle with a notice stating that the vehicle must be removed from Binford Road because it was in violation of California Vehicle Code section 22651, subdivisions (k) and (o).  The vehicle is a hazard to other traffic on Binford Road because it is parked on the shoulder of Binford Road close to the path of travel for other vehicles.

7. To my knowledge, the County of Marin has never issued parking permits to individuals residing on Binford Road.  On information and belief, the "Vehicle Permit" sticker depicted in Exhibit B to the Complaint in this matter, is a permit for sewage pump out from the County of Marin,

2

DECLARATION OF DEPUTY MICHAEL THOMPSON IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
Case No.: 24-cv-03859-RS

Case 3:24-cv-03859-RS   Document 8-1   Filed 07/03/24   Page 3 of 3

Environmental Health Services. California Vehicle Code section 22651(k) prohibits vehicles from parking upon a highway for 72 or more consecutive hours in violation of a local ordinance. Marin County Code section 15.36.030 similarly prohibits vehicles from parking on a street or highway within the unincorporated area of county for a period in excess of 72 consecutive hours.

8. Before posting the vehicle with the notice, I searched Department of Motor Vehicle records and determined that the vehicle does not have current registration and has not been registered during the past six months.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3rd day of July, 2024, in San Rafael, California.

*Michael D. Thompson*

_____

DEPUTY MICHAEL THOMPSON

---

3

DECLARATION OF DEPUTY MICHAEL THOMPSON IN SUPPORT OF DEFENDANT COUNTY OF MARIN'S OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
Case No.: 24-cv-03859-RS

EXHIBIT E

SUPPLEMENTAL DECLARATION OF ROBBIE POWELSON IN SUPPORT OF TRO AND PI - 7

 **NATIONAL WEATHER SERVICE**
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION

**Very Cold Temperatures from the Northern Plains to Ohio Valley; Swath of Snow from the Midwest to Central Appalachians**

Arctic air will bring very cold temperatures and dangerous wind chills from the Northern Plains to the Ohio Valley today, expanding into the Mid-South and Mid-Atlantic on Sunday. A swath of accumulating snow is expected today from the Midwest to Central Appalachians, expanding into portions of the Mid-Atlantic tonight into Sunday. Read More >

**Current conditions at**
**Novato / Gnoss Field (KDVO)**
Lat: 38.14178°N  Lon: 122.55463°W  Elev: 3.0ft.

Mist

# 43°F
6°C

| | |
|---|---|
| **Humidity** | 93% |
| **Wind Speed** | ESE 6 MPH |
| **Barometer** | 30.21 in (1023.03 mb) |
| **Dewpoint** | 41°F (5°C) |
| **Visibility** | 5.00 mi |
| **Wind Chill** | 39°F (4°C) |
| **Last update** | 14 Dec 11:15 AM PST |

**Extended Forecast for**
**Novato CA**

| Today | Tonight | Monday | Monday Night | Tuesday | Tuesday Night | Wednesday | Wednesday Night | Thursday |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  20 % → 60 % |  80% |  60 % → 30 % |  | |
| High: 48 °F | Low: 42 °F | High: 60 °F | Low: 50 °F | High: 62 °F | Low: 55 °F | High: 61 °F | Low: 46 °F | High: 59 °F |
| Mostly Sunny | Mostly Cloudy | Partly Sunny | Increasing Clouds | Slight Chance Rain then Rain Likely | Rain | Rain Likely then Chance Rain | Slight Chance Rain and Patchy Fog | Chance Rain and Patchy Fog |

## Detailed Forecast

**Today**
Mostly sunny, with a high near 48. East southeast wind around 5 mph becoming calm in the afternoon.

**Tonight**
Mostly cloudy, with a low around 42. Light west northwest wind.

**Monday**
Partly sunny, with a high near 60. Light west northwest wind.

**Monday Night**
Increasing clouds, with a low around 50. West wind 3 to 5 mph.

**Tuesday**
Rain likely, mainly after 4pm. Cloudy, with a high near 62. Calm wind becoming west 5 to 7 mph in the morning. Chance of precipitation is 60%.

**Tuesday Night**
Rain. Low around 55. Chance of precipitation is 80%. New precipitation amounts of less than a tenth of an inch possible.

**Wednesday**
Rain likely, mainly before 10am. Partly sunny, with a high near 61. Chance of precipitation is 60%.

**Wednesday Night**
A slight chance of rain. Patchy fog after midnight. Otherwise, mostly cloudy, with a low around 46.

**Thursday**
A chance of rain, mainly after 10am. Patchy fog before 9am. Otherwise, mostly cloudy, with a high near 59.

**Thursday Night**
Rain likely, mainly after 10pm. Cloudy, with a low around 51.

**Friday**
Rain. Cloudy, with a high near 57.

**Friday Night**
Rain likely. Cloudy, with a low around 48.

**Saturday**
A chance of rain. Patchy fog. Otherwise, mostly cloudy, with a high near 56.

**Basemap Options**
Topographic ⌄
Click map to change the forecast location





☐ Forecast Area    Disclaimer    Tiles ©ESRI

## ABOUT THIS FORECAST

**Point Forecast:**
Novato CA
38.11°N 122.56°W (Elev. 141 ft)

Forecast Discussion

KML  XML

## Additional Resources

## Radar & Satellite Image





## PROOF OF SERVICE

I, **Robbie Powelson**, declare as follows:

I am over the age of eighteen and not a party to this action. My address is in Marin County, California. On **December 15, 2025**, I served the following document(s):

Plaintiff's Reply to Defendants' Opposition to Temporary Restraining Order
Supplemental Declaration of Sean Derning
Supplemental Declaration of Robbie Powelson
All exhibits attached thereto
on the following parties: MARIN COUNTY SHERIFFS DEPARTMENT, COUNTY OF MARIN, MICHAEL THOMPSON
At the following address:
County Counsel
Marin County Civic Center
3501 Civic Center Drive, Suite 275
San Rafael, CA 94903
Service was effected as follows (check all that apply):

☐ By Electronic Service:
I electronically served the foregoing documents on the above-listed counsel by email at the email address listed above. Service was completed upon transmission.

**X By U.S. Mail:**
I placed a true and correct copy of the above-listed documents in a sealed envelope, with postage fully prepaid, and deposited it for collection and mailing in the United States mail at Marin County, California, addressed to the individual listed above.

☐ By Hand Delivery:
I caused such envelope to be delivered by hand to the address listed above.

☐ By Overnight Delivery:
I placed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person listed above, for delivery on the next business day.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/Robbie Powelson

Executed on **December 15, 2025**

PLAINTIFFS REPLY TO DEFENDANTS OPPOSITION TO TRO