BRIAN E. WASHINGTON, COUNTY COUNSEL
Jacy C. Dardine, Deputy County Counsel (SBN 294294)
OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN
3501 Civic Center Drive, Ste. 275
San Rafael, CA 94903
Tel.: (415) 473-6117
Fax: (415) 473-3796
Email: jacy.dardine@marincounty.gov

Attorneys for Defendants
COUNTY OF MARIN, MARIN COUNTY SHERIFF'S
OFFICE and MICHAEL THOMPSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN DERNING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARIN COUNTY SHERIFF'S DEPARTMENT,<br>et al.,<br><br>　　　　Defendants. | Case No.: 3:25-cv-10498-RFL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:　　　　March 24, 2026<br>Time:　　　　10:00 a.m.<br>Judge:　　　Honorable Rita F. Lin<br>Location:　　Philip Burton Federal Bldg.<br>　　　　　　Courtroom 15 – 18th Floor<br>　　　　　　450 Golden Gate Avenue<br>　　　　　　San Francisco, CA 94102 |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 24, at 10:00 a.m., or as soon thereafter as this matter may be heard in the above-entitled Court, located at the Philip Burton Federal Building, 450 Golden Gate Avenue, San Francisco, CA 94102, in the courtroom of the Honorable Rita F. Lin (Courtroom 15 - 18th Floor), defendants COUNTY OF MARIN, MARIN COUNTY SHERIFF'S OFFICE (erroneously sued as "Marin County Sheriff's Department"), and MICHAEL THOMPSON ("Defendants") will and hereby do move the Court for an order dismissing the complaint pursuant to FRCP 12(b)(1) and FRCP

i

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the declaration of Michael Thompson, the pleadings and papers on file herein, and upon such other evidence or argument as may be presented to the Court at the time of the hearing.

Dated: February 6, 2026

OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN

By: /s/ Jacy C. Dardine

Jacy Dardine, Deputy County Counsel
Attorneys for Defendants
COUNTY OF MARIN, MARIN COUNTY
SHERIFF'S OFFICE and MICHAEL
THOMPSON

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. RELEVANT FACTS .......................................................................................................... 2

III. PROCEDURAL HISTORY ............................................................................................. 5

　A. TEMPORARY RESTRAINING ORDER ................................................................. 5

　B. ABATEMENT WARRANT ...................................................................................... 5

IV. LEGAL ARGUMENT ...................................................................................................... 5

　A. PLAINTIFF'S CLAIMS ARE MOOT AND SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(1). ................................................................................ 6

　B. PLAINTIFF'S LAWSUIT FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6). ...................................................... 7

　　1. The State Created Danger Claim is Insufficient. ..................................... 8

　　2. The Americans with Disabilities Act Claim Fails. ................................. 10

　　3. The *Monell* Claim Fails. ........................................................................ 12

V. CONCLUSION ................................................................................................................ 13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

**TABLE OF AUTHORITIES**

Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................... 7, 8

*Bacon v. Woodward*,
   104 F.4th 744 (9th Cir. 2024) ...................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 7, 8

*Castro v. Cnty. of L.A.*,
   833 F.3d 1060 (9th Cir. 2016) .................................................................................... 12

*Cobine v. City of Eureka*,
   250 F.Supp.3d 423 (N.D. Cal. 2017) ............................................................................. 9

*Connick v. Thompson*,
   563 U.S. 51 (2011) ................................................................................................... 12

*DaimlerCrystler Corp. v. Cuno,*
   547 U.S. 332 (2006) .................................................................................................... 6

*DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*,
   489 U.S. 189 (1989) ............................................................................................... 2, 8

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ...................................................................................... 12

*Hous. is a Hum. Right Orange Cnty. v. Cnty. of Orange*,
   No. 19-cv-388, 2019 WL 6481311 (C.D. Cal. Aug. 12, 2019) ....................................... 9, 10

*Johnson v. Kennedy Radio Corp. v. Chicago Bears Football Club*,
   97 F.2d 223 (7th Cir. 1938) .......................................................................................... 7

*Martinez v. City of Clovis*,
   943 F.3d 1260 (9th Cir. 2019) .............................................................................. 8, 9, 10

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ................................................................................................. 12

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

*Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*,

    9 F.4th 1201 (9th Cir. 2021) ....................................................................................... 7

*Nw. Env't Defense Ctr. v. Gordon*,

    849 F.2d 1241 (9th Cir. 1988) ..................................................................................... 6

*Patel v. Kent Sch. Dist.*,

    648 F.3d 965 (9th Cir. 2011) ................................................................................. 8, 10

*Reed v. City of Emeryville*,

    568 F.Supp.3d 1029 (N.D. Cal. 2021)......................................................................... 9

*Sheehan v. City and Cnty. of S.F.*,

    743 F.3d 1211 (9th Cir. 2014) ................................................................................... 11

*Starr v. Baca*,

    652 F.3d 1202 (9th Cir. 2011) ..................................................................................... 8

*West v. Sec'y of Dep't of Transp.*,

    206 F.3d 920 (9th Cir. 2000) ....................................................................................... 6

*Where Do We Go Berkeley v. Cal. Dep't of Transp.*,

    32 F.4th 852 (9th Cir. 2022) ...................................................................................... 11

*Wills v. City of Monterey*,

    617 F.Supp.3d 1107 (N.D. Cal. 2022).......................................................................... 9

*Wolfson v. Brammer*,

    616 F.3d 1045 (9th Cir. 2010) ................................................................................. 2, 6

<u>Statutes</u>

42 U.S.C. § 1983........................................................................................................ 1, 8

42 U.S.C. § 1983, and (2)................................................................................................ 6

Cal. Civ. Proc. Code § 1822.50 ...................................................................................... 5

<u>Rules</u>

Fed. R. Civ. P. 8(a)(2) ................................................................................................... 7

Fed. R. Civ. P. 12(b)(1)......................................................................................... 2, 6, 7

Fed. R. Civ. P. 12(b)(6)........................................................................................... 2, 7

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

## I.    INTRODUCTION

Plaintiff Sean Derning's lawsuit seeks to prevent Defendants from removing an illegally parked vehicle from a County-maintained public road. For several years, Plaintiff and numerous other unhoused individuals have parked their vehicles on Binford Road between John Slough and Atherton Avenue near the Rush Creek Marsh Wildlife Area. Although parking is not permitted for more than 72-hours on County-maintained roads, the Marin County Sheriff's Office has exercised its discretion to not enforce the parking ordinance while the County of Marin and its community partners work to find alternative housing options for these unhoused individuals. As discussed in greater detail below, the County has provided handwashing stations, portable toilets, and regular trash pickup for individuals living on Binford Road. The County also conducts regular "cleanups" of sites identified as health and safety hazards to limit the risk to the surrounding community and the environment.

Plaintiff's RV has been a constant problem due to his failure to prevent personal property and debris from accumulating around the vehicle. The County has been forced to conduct sixteen cleanups of Plaintiff's site alone – far more than any other individual on Binford Road – and spent nearly $100,000 removing and storing Plaintiff's personal property. Accordingly, Deputy Thompson advised Plaintiff that the Sheriff's Office would begin enforcing the 72-hour parking ordinance should the behavior continue. Deputy Thompson ultimately posted the vehicle with a tow notice due to Plaintiff's continued refusal to comply with the County's requests. The instant lawsuit followed.

Plaintiff's lawsuit asserts three causes of action against the County of Marin, the Marin County Sheriff's Office, and Deputy Thompson under 42 U.S.C. § 1983. As noted above, and discussed in greater detail below, the lawsuit generally seeks to prevent the Marin County Sheriff's Office from enforcing the 72-hour parking ordinance and removing Plaintiff's vehicle from Binford Road. Plaintiff's lawsuit is deficient and should be dismissed pursuant to FRCP 12(b)(1) and 12(b)(6).

First, the Complaint, and each cause of action stated therein, is moot because Plaintiff's vehicle was removed from Binford Road on January 22, 2026, after this Court denied Plaintiff's motion for a temporary restraining order, and the Superior Court for the County of Marin issued an abatement warrant authorizing Deputy Thompson to remove the vehicle. Since there is no longer an actual, ongoing case or controversy, the lawsuit is moot. *See Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

Cir. 2010) ("A case or controversy must exist at all stages of review, not just at the time the action is filed."). Accordingly, the Complaint should be dismissed pursuant to FRCP 12(b)(1).

Second, the Complaint, and each cause of action stated therein, fails to state a plausible claim and should be dismissed pursuant to FRCP 12(b)(6). For the reasons discussed below, the claim based on the "state created danger" doctrine is insufficient because government entities are not required to protect individuals from harm except under limited circumstances, none of which are applicable in this case. *See DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989). Moreover, the claim based on the Americans with Disabilities Act ("ADA") is insufficient because there are no allegations that Plaintiff has been deprived of a public benefit or service, and even if he was, it is not due to a disability, but rather because Plaintiff refused to maintain his site on Binford Road in a reasonably safe condition. Simply stated, the instant lawsuit lacks merit and should be dismissed.

## II. RELEVANT FACTS

Binford Road is a narrow two-lane road in unincorporated Marin County that is adjacent to the Rush Creek Wildlife Preserve. *See* Declaration of Michael Thompson In Support of Opposition to Motion for a Temporary Restraining Order (Dkt. No. 12-1), at ¶ 3. There are no sidewalks. *Id.* The current speed limit is 35 mph. *Id.* Parking on Binford Road – like all County-maintained roads – is not permitted for more than 72 hours. *Id.*; *see also* Marin County Code ("MCC") § 15.36.030.

For several years, numerous unhoused individuals have been parking on Binford Road in violation of the County's parking ordinance. Most people have parked their vehicles between the narrow edge of the pavement and the Rush Creek Wildlife Area. *Id.* at ¶¶ 3-4. The County has never provided parking "permits" for individuals residing on Binford Road. *Id.* at ¶ 3. However, rather than enforcing the parking ordinance, the County has focused its efforts on connecting individuals with social services and other community resources to move unhoused people into alternative housing. *Id.* During this process, the County has provided portable bathrooms and handwashing stations, and it conducts regular trash pickups to prevent trash and debris from causing obstructions to the road, limit fire hazards and rodent infestation, and prevent hazardous material from falling into the adjacent wildlife preserve. *See* Declaration of Julia Barnes In Support of Motion for a Temporary Restraining Order (Dkt. No. 12-2), at ¶ 2.

Since the County does not have the time or resources to clean up every vehicle site on a regular basis, the County prioritizes the sites creating the greatest threat to the health and safety of the residents on Binford Road, the environment, and the surrounding community. *Id.* at ¶ 3. County provides advance notice to the vehicle occupant (to give them time to remove any property they do not want removed or discarded) and stores non-hazardous property at an offsite storage location for up to 90 days. *Id.* at ¶ 2. Individuals whose personal property is stored can retrieve it at no charge. *Id.* Property that is not claimed within 90 days is discarded. *Id.*; *see also* County's Guidelines for Removal of Unabandoned Personal Property for Binford Road, attached as **Exhibit A** to the Barnes Declaration (Dkt. No. 12-2).

Despite these efforts, there have been approximately ten vehicle fires on Binford Road that have caused unhoused individuals to be displaced and significant property damage. *Id.* at ¶ 5; *see also* Photo attached as **Exhibit A** to the Thompson Declaration (Dkt. No. 12-1). The accumulation of personal property around vehicles is particularly concerning because it further limits the narrow space between Binford Road and the Rush Creek Wildlife Area. *Id.* at ¶ 5. It can be dangerous for vehicles and people walking along the road because there is little to no room between the edge of the pavement and parked vehicles. At least one person has been struck by a passing vehicle and seriously injured while walking along Binford Road. *Id.* at ¶ 4.

Plaintiff's RV is the largest vehicle on Binford Road. *Id.* at ¶ 6. The vehicle is parked within inches of the fog line on the edge of the roadway. *Id.* The County has been required to conduct more cleanups of Plaintiff's site than any other site on Binford Road because of the constant accumulation of trash, debris, and personal property in the County's right-of-way. Thompson Declaration, at ¶ 6 (Dkt. No. 12-1); Barnes Declaration, at ¶ 4 (Dkt. No. 12-2). Since 2023, the County has conducted sixteen cleanups of Plaintiff's site, while the site requiring the second most attention has only required seven cleanups.[1] Barnes Declaration, at ¶ 4 (Dkt. No. 12-2). Some cleanups have been required within weeks

---

[1] In May 2024, Plaintiff and two other unhoused individuals residing on Binford Road filed a lawsuit in district court against the County of Marin, Deputy Thompson, and Julia Barnes alleging various constitutional violations. *See Silveria, et al. v. County of Marin, et al.*, Northern District of California, Case No. C24-03181-AMO. The Plaintiffs in that case sought a temporary restraining order preventing the County from conducting periodic cleanups and for the return of personal property that was allegedly seized. Dkt. No. 1. On May 30, 2024, the district court denied the motion for a temporary restraining order. ECF No. 15. On February 13, 2025, the district court granted, in part, and denied, in part,

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

of one another and significant personal property is removed and stored, then claimed, and returned to Plaintiff's site within days. *See* Photos attached as **Exhibits B-Q** to the Barnes Declaration (Dkt. No. 12-2). In total, the County has spent almost $100,000 removing and storing personal property from Plaintiff's site alone. Barnes Declaration, at ¶ 4 (Dkt. No. 12-2). In addition to the cost, the required focus on Plaintiff's site prevents the County from cleaning up other sites on Binford Road that also require attention.

On April 17, 2025, Deputy Thompson advised Plaintiff that the County would begin enforcing its 72-hour parking ordinance against him if he continued to allow personal property, trash, and debris to accumulate around his site. Thompson Declaration, at ¶ 7 (Dkt. No. 12-1). Specifically, Deputy Thompson advised that even one more violation could result in his vehicle being removed from Binford Road. *Id.* Despite this warning, Plaintiff continued to accumulate trash and debris at his site, creating a serious threat to the health and safety of the other unhoused people living on Binford Road and the surrounding community. *Id.* at ¶ 8. Between April 17, 2025, and November 20, 2025, the County was required to cleanup Plaintiff's site <u>six</u> more times. *Id.*; *see also* Barnes Declaration, at ¶ 4.

On November 20, 2025, Deputy Thompson again advised Plaintiff that the County would begin enforcing its 72-hour parking ordinance against him if it had to conduct <u>any</u> additional cleanups of Plaintiff's site. Thompson Declaration, at ¶ 8 (Dkt. No. 12-1). The warning was provided following yet another cleanup that required the County to remove a large amount of personal property, trash, and debris from Plaintiff's site. Barnes Declaration, at ¶ 4 (Dkt. No. 12-2); *see also* Photos attached as **Exhibit Q** to the Barnes Declaration. Deputy Thompson further advised that he would return (as early as the next day) to make sure that the site looked that same as it did post-cleanup. Thompson Declaration, at ¶ 8 (Dkt. No. 12-1).

On November 26, 2025, Deputy Thompson inspected Plaintiff's site and determined that more trash, debris, and personal property had accumulated in the County's right-of-way notwithstanding the

County's motion to dismiss the complaint. ECF No. 31. The court ruled that Plaintiffs had stated a valid claim under the Fourth Amendment, but the remaining claims, including claims under the State Created Danger Doctrine and the Americans with Disabilities Act were insufficient. *Id.* The *Silveria* action remains pending – the court having stayed the proceedings and ordered Plaintiffs to seek pro bono counsel. ECF No. 43.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

admonitions on April 17th and November 20th.  *Id.* at ¶ 9 (Dkt. No. 12-1); *see also* Photos attached as **Exhibit C** to the Thompson Declaration.

On December 4, 2025, Deputy Thompson posted Plaintiff's vehicle with a 72-hour tow notice. Thompson Declaration, at ¶ 10 (Dkt. No. 12-1).  On December 10, 2025, Deputy Thompson re-inspected the site and determined that the conditions were substantially the same as they had been during the inspection on December 4th.  *Id.* at ¶ 11 (Dkt. No. 12-1).

### III.  PROCEDURAL HISTORY

#### A.    TEMPORARY RESTRAINING ORDER

Plaintiff filed the instant lawsuit on December 8, 2025 (Dkt. No. 1) and concurrently filed an Ex Parte Application for a Temporary Restraining Order seeking to prevent the towing of his vehicle (Dkt. No. 3).  The parties appeared for a status conference on December 9, 2025, and Defendants agreed to postpone towing the vehicle until the Court had an opportunity to determine whether a temporary restraining order should be granted (Dkt. No. 11).  Defendants filed opposition to the ex parte application on December 12, 2025 (Dkt. No. 12), and the Court denied the application on December 16, 2025, following a hearing, but the Court held entry of the denial in abeyance until December 22, 2025, to provide additional time for Plaintiff to voluntarily relocate his vehicle (Dkt. No. 16).  On December 17, 2025, Plaintiff filed an Ex Parte Motion for Reconsideration (Dkt. No. 18).  The Court denied the ex parte application sua sponte (Dkt. No. 19).

#### B.    ABATEMENT WARRANT

On January 14, 2026, the Superior Court of California for the County of Marin granted Deputy Thompson's Ex Parte Application for an Abatement Warrant to remove Plaintiff's vehicle pursuant to California Code of Civil Procedure section 1822.50.  *See* Abatement Warrant, attached as **Exhibit A** to the Declaration of Michael Thompson in Support of Motion to Dismiss; *see also* Request for Judicial Notice in Support of Motion to Dismiss.  Based on the Abatement Warrant, Deputy Thompson removed Plaintiff's vehicle on January 22, 2026, after Plaintiff failed to voluntarily remove the vehicle.  *See* Deputy Thompson Declaration, at ¶ 3.

### IV.  LEGAL ARGUMENT

Plaintiff's lawsuit lacks merit and should be dismissed.  The Complaint asserts claims against

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

Deputy Thompson for (1) "state created danger" under 42 U.S.C. § 1983, and (2) violation of Title II of the Americans with Disabilities Act ("ADA").  The Complaint also asserts a *Monell* claim against the County of Marin and the Marin County Sheriff's Office (erroneously sued as "Marin County Sheriffs Department").  For the reasons discussed below, the claims are moot and should be dismissed for failure to state a claim.

### A.    PLAINTIFF'S CLAIMS ARE MOOT AND SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(1).

The instant lawsuit seeks an injunction preventing the County of Marin and/or the Marin County Sheriff's Office from removing Mr. Derning's vehicle which was parked on Binford Road in violation of the County's 72-hour parking ordinance.  In tandem with the Complaint, Plaintiff filed a motion for a temporary restraining order, but the Court denied this request, based, in part, on evidence that the vehicle at issue creates an unreasonable danger to the other residents on Binford Road and the surrounding community.  Accordingly, the County removed the vehicle pursuant to an abatement warrant on January 22, 2026.  Since the vehicle has already been removed, there is no longer anything for this Court to adjudicate.  Simply stated, the instant lawsuit is moot.

Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010).  "A case or controversy must exist at all stages of review, not just at the time the action is filed." *Id.* at 1053.  The "case or controversy" clause requires, among other things, that a plaintiff have standing, that the plaintiff's claims be ripe for adjudication, and that the plaintiff's claims not be moot. *See DaimlerCrystler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).  Thus, courts must consider factual developments occurring after the suit is filed to ensure an actual controversy continues to exist at all stages of the litigation. *See Bacon v. Woodward*, 104 F.4th 744, 750 (9th Cir. 2024).

The central issue in any mootness challenge is whether changes in the circumstances existing when the action was filed have forestalled the possibility of providing meaningful relief. *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000) ("[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available.  The question is whether there can be any effective relief.") (quoting *Nw. Env't Defense Ctr. v. Gordon*, 849 F.2d 1241, 1244-45

(9th Cir. 1988)). An injunction suit becomes moot after the act sought to be enjoined has already occurred. *Johnson v. Kennedy Radio Corp. v. Chicago Bears Football Club*, 97 F.2d 223, 225 (7th Cir. 1938) (holding that an injunction suit to prevent broadcasting of football game became moot after game broadcast); *see also Native Vill. of Nuiqsut v. Bureau of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021) (holding that an environmental challenge to a planned project was moot where drilling was over, the project had been completed, the wells had been capped and equipment removed).

Here, the lawsuit seeks to prevent the occurrence of something that has already occurred – namely, the removal of Mr. Derning's vehicle from Binford Road. Although the lawsuit asserts three claims, these are essentially three separate theories to advance Plaintiff's argument against removal and in support of a preliminary restraining order and/or an injunction. Indeed, Plaintiff's prayer for relief is for "a [temporary restraining order], preliminary injunction, and permanent injunction [] enjoining Defendants from seizing Plaintiffs [sic] home and property," as well as declaratory relief, attorney's fees and costs. *See* Complaint, at 10 (Dkt. No. 1). The Complaint does not seek damages. *Id.* Since the lawsuit seeks to prevent the removal of Mr. Derning's vehicle, and the vehicle has already been removed, there is no longer any controversy for this Court to decide. Accordingly, the instant lawsuit is moot and should be dismissed pursuant to FRCP 12(b)(1).

**B.**    **PLAINTIFF'S LAWSUIT FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6).**

In addition to lack of subject-matter jurisdiction, Plaintiff's lawsuit should be dismissed because the claims against Deputy Thompson, the County of Marin, and the Marin County Sheriff's Office do not demonstrate a claim for relief that is plausible on its face. Federal Rules of Civil Procedure Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleading is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

To survive a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, the claims against Deputy Thompson under the "state created danger" doctrine and the ADA fail because there are insufficient facts to establish a claim for relief.  The *Monell* claim against the County of Marin and the Marin County's Sheriff's Office is similarly deficient.

1.     The State Created Danger Claim is Insufficient.

The "state created danger" claim fails because Deputy Thompson does not have a legal duty to protect Plaintiff from the inherent dangers of being unhoused.  It is well-established that the Due Process Clause of the Fourteenth Amendment "is a limitation on state action and is not a guarantee of certain minimal levels of safety and security." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).  "The general rule is that a state is not liable for its omissions and the Due Process Clause does not impose a duty on the state to protect individuals from third parties." *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  There are two exceptions to this general rule. *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).  First, a special relationship between the plaintiff and the state may give rise to a constitutional duty to protect. *Id.*  Second, the state may be constitutionally required to protect a plaintiff that it "affirmatively places" in danger by acting with "deliberate indifference" to a "known or obvious danger." *Id.*

Here, there are no allegations that a "special relationship" exists, nor could there be, since the special relationship exception only applies when a state "takes a person into its custody and holds him there against his will." *Id.* at 199-200.  The types of custody triggering the exception are "incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200.  "The special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011).  Here, Plaintiff does not contend that he is being held against his will or that restraints have been imposed upon his personal liberty.

Thus, to establish a claim under Section 1983 for a state-created danger, Plaintiff must establish

the following elements:  (1) that Deputy Thompson's affirmative actions created or exposed him to "an actual, particularized danger that [he] would not otherwise have faced," (2) the injury suffered was foreseeable, and (3) Deputy Thompson was "deliberately indifferent to the known danger."  *See Martinez*, 943 F.3d at 1271.  Here, the Complaint does not contain sufficient factual allegations to establish any of these elements.

The Complaint does not demonstrate that Deputy Thompson's actions created or exposed Plaintiff to a particularized danger that he would not have otherwise faced.  Courts have consistently rejected claims like this.  For example, in *Cobine v. City of Eureka*, the district court ruled that unhoused individuals had not stated a plausible claim based on allegations the city's forced eviction from a homeless encampment and prohibition against residing in their own tents on public land caused them to reside and sleep "on the street in unfamiliar areas, and without the support of the community, reder[e]d them vulnerable to assault, theft, harassment, and worse."  *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017).  The court dismissed the state-created danger/deliberate indifference claims because there were no "particular allegations" that the state action "put the Plaintiffs in an inherently dangerous situation, [and] the Court is bound to find that the generalized dangers of living on the street preexisted Plaintiffs' relocation from the [homeless encampment].  *Id.* at 433.

In another case, the district court rejected a state-created danger claim concerning unhoused individuals because the plaintiffs had not "sufficiently alleged well-pleaded facts plausibly suggesting that the City has taken the type of affirmative steps to place an individual in a known and likely danger to satisfy the deliberate indifference standard . . . [a]dditionally, the difficulties the homeless individuals camping at the temporary campground may face are largely identical to those they would face while camping elsewhere in the City."  *Hous. is a Hum. Right Orange Cnty. v. Cnty. of Orange*, No. 19-cv-388, 2019 WL 6481311, at *12 (C.D. Cal. Aug. 12, 2019); *see also Wills v. City of Monterey*, 617 F.Supp.3d 1107, 1124 (N.D. Cal. 2022) (rejecting state-created danger claim based on enforcement of municipal code section prohibiting camping because it did not expose plaintiff "to a danger which she would not have otherwise faced."); *Reed v. City of Emeryville*, 568 F.Supp.3d 1029, 1039-40 (N.D. Cal. 2021) (rejecting state created-danger claim based on allegations that congregate shelter setting would exacerbate the plaintiffs' mental health impairments because city did not place defendants in a more

dangerous situation than they had been in); *Willis v. City of Monterey*, 617 F.Supp.3d 1107, 1123-25 (N.D. Cal. 2022) (rejecting state created danger claim based on alleged dangers from other homeless individuals).

Here, Plaintiff contends that towing his vehicle would deprive him of shelter and prevent him from accessing public services. Plaintiff's argument is similar to the arguments made (and rejected) in the *Cobine* and the *Orange County* cases noted above because the County did not affirmatively create the situation where Plaintiff is without permanent housing. Whether the County begins enforcing its parking ordinance against Plaintiff or not, he will face the same generalized dangers of being unhoused that he previously faced.

Further, the Complaint does not demonstrate that Deputy Thompson was deliberately indifferent to a known danger. "Deliberate indifference" requires "proof that a municipal actor disregarded a known or obvious consequence of his action," which is "a stringent standard of fault." *Martinez v. City of Clovis*, 943 F.3d 1260, 1274 (9th Cir. 2019). It requires "a culpable mental state" meaning the state actor "must recognize an unreasonable risk and actually *intend* to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Patel*, 648 F.3d at 974 (emphasis added). There are no allegations that Deputy Thompson *intended* to expose Plaintiff to harm. At most, the Complaint alleges that there is a mere possibility of harm due to being unsheltered, but the alleged harm is not certain and is hypothetical. Accordingly, the allegations do not demonstrate deliberate indifference to a known harm and are insufficient to state a claim under the state created danger doctrine.

2.    The Americans with Disabilities Act Claim Fails.

Plaintiff's claim under the Americans with Disabilities Act fails because he cannot demonstrate that he has been excluded from a County program or service due to a disability. Even assuming that County's decision to not enforce its parking ordinance for individuals residing on Binford Road is a program or service (which it is not), the allegations in the Complaint demonstrate that County's decision to enforce the ordinance against Plaintiff is due to his continued refusal to maintain health and safety standards – not a disability.

"To state a claim under Title II of the ADA, a plaintiff generally must show:  (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." *Sheehan v. City and Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part sub nom. City and Cnty. of S.F. v. Sheehan*, 575 U.S. 600 (2015); *see also Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859-61 (9th Cir. 2022) (holding that a temporary restraining order preventing Caltrans from removing a homeless encampment does not violate the ADA).

Even assuming Plaintiff can demonstrate that he is an individual with a disability under the ADA, he cannot demonstrate that he has been deprived of access to a County benefit or service, or that any alleged deprivation is due to a disability. First, County's social services do not depend on Plaintiff remaining on Binford Road. Plaintiff can continue to work with the County's social worker that has been assisting him, and the removal of his vehicle from Binford Road will not terminate those benefits. Similarly, the removal of his vehicle does not affect his ability to seek medical services from the County, to the extent that he is receiving them (which is unclear from the motion and the declarations attached to the motion). Thus, his claim that he will be denied access to County's social services is simply incorrect. Similarly, Plaintiff's claim that his "parking permit" for Binford Road is being terminated is incorrect because no such "permit" ever existed. Although the County has de-emphasized enforcement of the parking ordinance on Binford Road while seeking alternative housing options, the County has never issued permits for people to park there, and the County's policy has always been with the caveat that people cooperated with the County to reduce the risk of harm from accumulated trash and debris – a policy which Plaintiff has repeatedly ignored.

Second, even assuming that Plaintiff is a qualifying individual with a disability (which he is not), and further assuming that he will lose access to County benefits or services (which he will not), there are insufficient allegations demonstrating that the elimination of his benefits or services is "by reason of" his alleged disability, which is required under the ADA. Rather, the evidence, including the evidence submitted by Plaintiff in support of his motion for a temporary restraining order, demonstrates that vehicle was towed because Plaintiff refused to prevent personal property, debris, and trash from accumulating around his site on Binford Road. Nothing in the ADA requires public entities to

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL

fundamentally alter the benefits or services being provided for a person with a disability, and any accommodation under the ADA must be "reasonable." Here, at most, the County has required Plaintiff (and all individuals residing on Binford Road) to prevent harmful and dangerous trash and debris from accumulating in the County's right-of-way. This accommodation is more than reasonable. Allowing Plaintiff to continue to store his personal property in the right-of-way of a busy public road is not reasonable under the ADA or any objective standard. For these reasons, Plaintiff's claim under the ADA fails.

> 3.      The *Monell* Claim Fails.

Plaintiff's *Monell* claim against the County and the Marin County Sheriff's Office also fails. It is well-established that municipalities are not liable for § 1983 violations under a theory of respondeat superior for the actions of subordinates. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1073 (9th Cir. 2016). To establish municipal liability, a plaintiff must prove that "action pursuant to official municipal policy" caused the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Specifically, the plaintiff must demonstrate that the challenged policy, practice, or custom "amounts to deliberate indifference to the plaintiff's constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011). Deliberate indifference is an objective standard that requires a showing that the facts available to policy makers "put them on actual or constructive notice that the particular omission is *substantially certain to result in the violation of the constitutional rights of their citizens*." *Castro*, 833 F.3d at 1076 (citation omitted; emphasis added).

Here, even assuming that a violation has occurred (which it has not), there are insufficient allegations demonstrating that the violation was based on an official policy or decision by government officials. Although the Complaint references another action filed in U.S. District Court, *Fleming v. County of Marin* (3:24-cv-03859-RS), it is unclear how this case is relevant since Plaintiff was not a party to the action, and the action involved different issues than the instant case. In any event, the *Monell* claim fails for the same reason that the Section 1983 claims against Deputy Thompson fail –

there has been no violation of Plaintiff's civil rights.

## V.    CONCLUSION

Based on the foregoing, defendant County of Marin and defendant Michael Thompson respectfully request that this Court grant the Motion to Dismiss.

Dated:  February 6, 2026

OFFICE OF THE COUNTY COUNSEL
COUNTY OF MARIN


By: /s/ Jacy C. Dardine

Jacy Dardine, Deputy County Counsel
Attorneys for Defendants
COUNTY OF MARIN, MARIN COUNTY
SHERIFF'S OFFICE and MICHAEL
THOMPSON

13

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO
FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 3:25-cv-10498-RFL